IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMANDA SUE DILTZ, | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-20-266 |
| CHRISTOPHER ASHTON, et al., | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.  (ECF Nos. 20, 26, 33). Currently pending are defendants Mid-Atlantic Military Family Communities, LLC ("Mid-Atlantic") and LPC Property Management, LLC's ("LPC") Motion for Summary Judgment and Request for Hearing (ECF No. 83), plaintiff Amanda Sue Diltz's Opposition to Defendant Mid-Atlantic and LPC's Motion for Summary Judgment (ECF No. 85), defendants Mid-Atlantic and LPC's Reply Memorandum in Support of Motion for Summary Judgment (ECF No. 90), plaintiff's Surreply to Defendant Mid-Atlantic and LPC's Reply Memorandum in Support of Motion for Summary Judgment (ECF No. 94), the Ashton defendants' Renewed Motion for Summary Judgment (ECF No. 84), plaintiff Amanda Sue Diltz's Opposition to Defendant Christopher and Janna Ashton's Motion for Summary Judgment (ECF No. 86), and the Ashton defendants' Reply to Plaintiff's Response to Motion for Summary Judgment (ECF No. 87).  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendants Mid-Atlantic and LPC's Motion for Summary Judgment and Request for Hearing (ECF No. 83) is granted in part and

denied in part, and the Ashton defendants' Renewed Motion for Summary Judgment (ECF No. 84) is granted in part and denied in part.

## **BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is plaintiff in this case. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). Plaintiff Amanda Diltz ("plaintiff") sustained personal injuries on June 1, 2019, when a dog named Luna, owned by defendants Christopher and Janna Ashton ("the Ashton defendants"), bit plaintiff's face. (ECF No. 2 ¶¶ 3, 5). At the time of the incident, plaintiff and the Ashton defendants resided in a housing community in Annapolis, Maryland known as Arundel Estates, owned and managed by defendants Mid-Atlantic Military Family Communities, LLC and LPC Property Management, LLC ("defendants Mid-Atlantic and LPC"). (ECF Nos. 83 at 2, 85 at 1). Arundel Estates is located on property owned by the United States Navy. (<u>Id.</u>)

On the evening of June 1, 2019, the Ashton defendants arrived at plaintiff's residence for a social gathering. (ECF No. 85-1 at 5). After some time, the Ashton defendants left plaintiff's residence to retrieve Luna and take her for a walk. (<u>Id.</u> at 6). The Ashton defendants then returned to plaintiff's residence and brought Luna onto the back patio, where the Ashtons, plaintiff, and plaintiff's husband, Nicholas Diltz, proceeded to sit in Adirondack chairs. (<u>Id.</u> at 6-7). Plaintiff alleges that shortly before midnight, she began to get out of her chair "when Luna lunged and bit Plaintiff's face so severely that she amputated Plaintiff's nose." (<u>Id.</u> at 7). While the parties dispute the extent of the Ashton defendants' control over Luna at the time of the attack, the parties agree that Luna was laying down, not running, and "resting in the middle of the four adults who

were seated on the perimeter of the patio" just before biting plaintiff. (ECF Nos. 84-1 at 10, 86-1 at 25-26).

The Ashton defendants initially signed a lease to reside in Arundel Estates on March 22, 2018. (ECF No. 86-1 at 8). After Christopher Ashton ("Mr. Ashton") left the military, however, he had to resubmit his application in November 2018 to remain in Arundel Estates. (Id.) In his application, Mr. Ashton requested an accommodation to keep Luna, a rottweiler, on the property despite defendants Mid-Atlantic and LPC's policy prohibiting tenants from having rottweilers. (Id. at 7-8). Defendants Mid-Atlantic and LPC argue that they permitted the Ashtons to keep Luna because she was a "service animal" for Mr. Ashton, who was disabled. (ECF No. 83-1 at 3). Plaintiff, however, contends that Luna was "an emotional support animal for Mrs. Ashton." (ECF No. 85-1 at 8).

On August 8, 2019, plaintiff filed suit against the Ashton defendants in the Circuit Court for Anne Arundel County. (ECF No. 1 ¶ 1). On December 13, 2019, plaintiff filed an Amended Complaint, adding Mid-Atlantic and LPC as defendants. (Id. ¶ 2). On January 30, 2020, defendants Mid-Atlantic and LPC removed the case to this court pursuant to the court's federal question jurisdiction under 28 U.S.C. § 1331. (Id. ¶ 4). In her Amended Complaint, plaintiff alleges that the Ashton defendants "were negligent for their failure to control Luna whom they knew to possess vicious propensities." (ECF No. 2 ¶ 6). In addition, plaintiff alleges a strict liability claim against the Ashton defendants under Maryland Code, Courts and Judicial Proceedings Article, § 13-1901(c). (Id. ¶ 7). Plaintiff also alleges that defendants Mid-Atlantic and LPC were negligent for allowing the Ashtons to keep Luna in violation of their lease. (Id. ¶¶13-17). Plaintiff seeks damages in an amount greater than $75,000. (Id. at 5). Discovery closed on October 1, 2021, and thereafter, the pending Motions and related pleadings were filed.

## I.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. <u>Id.</u> The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); <u>Pulliam Inv. Co., Inc. v. Cameo Props.</u>, 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party but considers whether a fair-minded factfinder could return a verdict for the non-moving party on the evidence presented.  <u>Anderson</u>, 477 U.S. at 252.  In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  <u>Celotex</u>, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient

to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable factfinder could find in favor of the non-moving party.  Anderson, 477 U.S. at 252.

## II.   DISCUSSION

### A.  The Ashton Defendants' Motion for Summary Judgment

In Count I of the Amended Complaint, plaintiff alleges a strict liability claim and a negligence claim against the Ashton defendants.[1]  (ECF No. 2 ¶¶ 6-7).  The Ashton defendants move for summary judgment as to Count I, arguing that (1) they are not strictly liable under Section 3-1901(c) of the Maryland Code because Luna "was not running at large before [plaintiff] was bitten" (ECF No. 84-1 at 10), and (2) they were not negligent because they did not know or have reason to know about Luna's vicious or dangerous propensities (id. at 13-19).

### 1. Strict Liability

The Ashton defendants contend that they are not strictly liable for plaintiff's injuries because Luna was not "running at large."  (ECF No. 84-1 at 9-11).  In Maryland, the owner of a dog is strictly liable for any injury "that is caused by the dog[] while the dog is running at large," unless the victim was "(1) [c]ommitting or attempting to commit a trespass or other criminal

---

[1] As a preliminary matter, this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the incident in this case occurred on a federal enclave.  See Jones v. John Crane-Houdaille, Inc., No. CCB-11-2374, 2012 WL 1197391, *1, *1 (D. Md. Apr. 6, 2012) ("A suit based on events occurring in a federal enclave . . . must necessarily arise under federal law and implicates federal question jurisdiction under § 1331.").  In a civil action brought to recover for an injury sustained in a federal enclave, the substantive law of the state in which the federal enclave is located governs. 28 U.S.C. § 5001(b); see Colon v. United States, 320 F. Supp. 3d 733, 747 n.6 (D. Md. 2018). Here, because Arundel Estates is located in Maryland, the court must apply Maryland law to plaintiff's substantive claims.

offense on the property of the owner, (2) [c]omitting or attempting to commit a criminal offense against any person; or (3) [t]easing, tormenting, abusing, or provoking the dog." Md. Code, Cts. & Jud. Proc. § 3-1901(c).  In this case, the Ashton defendants argue that plaintiff's injury occurred while Luna "was laying down" and "not running at large."  (ECF No. 84-1 at 10).  Plaintiff acknowledges that Luna "was resting in the middle of the four adults who were seated on the perimeter of the patio" but maintains that "this alone is not dispositive of the issue" of strict liability because the degree of the Ashton defendants' control over Luna at the time of the attack is disputed. (ECF No. 86-1 at 26).

While Section 3-1901 does not define the phrase "running at large," Maryland courts have interpreted the meaning of "at large" in the context of various county ordinances.  See Gunpowder Horse Stables v. State Farm Auto. Ins. Co., 108 Md. App. 612, 622, 673 A.2d 721, 726 n.4 (1996) (Baltimore County ordinance defined "at large" animal as "any animal, other than a dog, off the premises of the owner and not under the control, charge, or possession of the owner or other responsible person."); Slack v. Villari, 59 Md. App. 462, 471, 476 A.2d 227, 231 (1984) (Prince George's County ordinance defined "at large" animal as one "not under restraint [i.e., unleashed] and off the premises of his owner"); Moura v. Randall, 119 Md. App. 632, 648, 705 A.2d 334, 342 (1998) (Montgomery County ordinance defined "at large" animal as one "off the premises of its owner and not either leashed or otherwise under the immediate control of the responsible person capable of physically restraining the animal").  Here, while there is no dispute that Luna was off the premises of her owners (ECF Nos. 84 at 1, 86 at 1), there is a genuine dispute as to whether Luna was under the control of the Ashton defendants at the time of the attack (see ECF Nos. 84-1 at 10-11, 86-1 at 26-27).

There is no evidence in this case, however, that Luna was running, as that term is plainly understood, when she caused plaintiff's injuries.  The Ashton defendants maintain that just prior to biting plaintiff, Luna was laying down, seated beside Janna Ashton, and "confined within a tight circle of four persons."  (ECF No. 84-1 at 1).  Similarly, in her written statement to local animal control authorities, plaintiff acknowledged that "Luna was resting in the middle of the four adults who were seated on the perimeter of the patio," and that when plaintiff got up from her seat to go to the bathroom, "Luna lunged forward and bit [plaintiff] on the face."  (ECF No. 86-7 at 5).  While the parties disagree as to whether Luna was under the Ashton defendants' control at the time of the attack (ECF Nos. 84-1 at 10-11, 86-1 at 26-27), there is no evidence that Luna was "running." Cf. Selepack v. Newsome, No. 1:15-cv-01227 (JCC/JFA), 2016 WL 335679, *1, *1 n.1 (E.D. Va. Jan. 27, 2016) (noting that an ordinance in Loudoun County, Virginia defined a dog "running at large" as one "which is roaming, running or self-hunting off the property of its owner or custodian and is not under its owner's or custodian's immediate control").  Accordingly, summary judgment is granted as to plaintiff's strict liability claim in Count I.

### 2. Negligence

Next, the Ashton defendants argue that they were not negligent because they neither knew nor should have known of Luna's vicious or dangerous propensities.  (ECF No. 84-1 at 11).  In an action against the owner of a dog for personal injury caused by the dog, "evidence that the dog caused the personal injury . . . creates a rebuttable presumption that the owner knew or should have known that the dog had vicious or dangerous propensities."  Md. Code, Cts. & Jud. Proc. § 3-1901(a)(1).  "Notwithstanding any other law or rule, in a jury trial, the judge may not rule as a matter of law that the presumption has been rebutted before the jury returns a verdict."  Id. § 3-1901(a)(2).

Here, it is undisputed that Luna bit plaintiff's face, causing plaintiff's injuries.  (ECF No. 84-1 at 14-15, 86-1 at 22, 86-7 at 7-8).  Nevertheless, the Ashton defendants attempt to rebut the presumption that they knew or should have known of Luna's vicious or dangerous propensities.  (ECF No. 84-1 at 13-19).  Plaintiff, however, argues that defendant is not entitled to rebut the presumption set forth in Section 3-1901(a) until a jury returns a verdict.  (ECF No. 86-1 at 19).  The Ashton defendants respond that such limitation applies only in a jury trial.  (ECF No. 84-1 at 8).

Even if the Ashton defendants are entitled to rebut Section 3-1901(a)'s presumption at the summary judgment stage, however, there is clearly a genuine dispute of material fact as to whether the Ashton defendants knew or should have known of Luna's dangerous propensities.  For example, the Ashton defendants note that Luna was a "service dog" and that Luna "never exhibited any aggressive behavior, such as growling, biting, or charging any other animal or individual."  (ECF No. 87-2 at 7).  In addition, two neighbors of the Ashton defendants observed that Luna never exhibited dangerous behavior and had a "gentle nature" around children.  (ECF Nos. 84-1 at 14, 87-2 at 10 n.2).  The Ashton defendants also provide evidence that Luna was boarded for three weeks in North Carolina for behavioral training, and that Luna was trained to not use her teeth.  (ECF No. 87-2 at 8).

There is also evidence, however, from which a jury could reasonably conclude that the Ashton defendants knew or should have known of Luna's vicious or dangerous propensities.  As plaintiff notes (ECF No. 86-1 at 24), Luna's veterinary records from 2016 and 2017 were labeled "Caution" and "Extreme Caution" (ECF No. 86-8 at 32-33), warning veterinary staff about Luna's potential aggressiveness (ECF No. 86-9 at 3-4).  In addition, records show that Luna was "uncooperative" during an exam on December 30, 2016, and unable to be examined "due to aggressive nature of dog."  (ECF No. 85-8 at 32-33).  Luna's veterinarian, Dr. Justin Kontir, also

testified during his deposition that Luna was subject to a "red alert," meaning that when veterinary staff pulled Luna's records, they were alerted to the fact that Luna was a dangerous dog and that they should be careful around her.  (ECF No. 86-9 at 11-12).  Dr. Kontir testified that only a minority of dogs that come into his veterinary clinic are subject to a red alert.  (Id. at 12).  Notably, the Ashton defendants do not argue that they were unaware of these records.  In addition, records from February 20, 2017, reflect that the Ashton defendants specifically told the clinic that Luna "is very aggressive for injections and nails and will need [to be] sedated."[2]  (ECF No. 85-8 at 32). Accordingly, based on the conflicting evidence discussed above as to whether the Ashton defendants knew or should have known of Luna's dangerous propensities, summary judgment is denied as to plaintiff's negligence claim in Count I.

### B.  Defendants Mid-Atlantic and LPC's Motion for Summary Judgment

In Count II of the Amended Complaint, plaintiff alleges a negligence claim against defendants Mid-Atlantic and LPC.  (ECF No. 2 ¶¶ 13-18).[3]  Defendants Mid-Atlantic and LPC move for summary judgment as to Count II, arguing that (1) plaintiff's negligence claim is preempted by the federal Fair Housing Act ("FHA"), and (2) defendants Mid-Atlantic and LPC did not breach any duty of care owed to plaintiff.  (ECF No. 83-1 at 6-11).

---

[2] While the Ashton defendants reference testimony from Dr. Kontir indicating that Luna's behavior inside the clinic may not have necessarily been the same as her behavior towards people outside the clinic (ECF No. 87-2 at 9-11), there clearly remains a factual dispute as to whether the Ashton defendants knew or should have known of Luna's dangerous propensities.

[3] Defendants Mid-Atlantic and LPC assert that plaintiff also alleges a strict liability claim against them.  (ECF No. 83-1 at 6).  Although the court does not read plaintiff's Amended Complaint as alleging a strict liability claim against defendants Mid-Atlantic and LPC, to the extent plaintiff does so, summary judgment is granted as to that claim, as discussed below.

### 1. Preemption

Defendants Mid-Atlantic and LPC argue that plaintiff's claims are preempted by the FHA under the doctrine of obstacle preemption because they were required under the FHA to allow the Ashtons to keep Luna, a rottweiler and registered service dog, at their property, despite defendants Mid-Atlantic and LPC's policy prohibiting rottweilers.  (ECF No. 83-1 at 6-10).  State law is preempted under the doctrine of obstacle preemption "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Columbia Venture, LLC, v. Dewberry & Davis, LCC, 604 F.3d 824, 829-30 (4th Cir. 2010) (citing Freightliner Corp. v. Myrick, 513 U.S. 280, 287 (1995)) (internal quotation marks omitted).  "This occurs where state law interferes with the *methods* by which the federal statute was designed to reach [its] goal."  Id. at 830 (citing Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 103 (1992)) (emphasis added) (internal quotation marks omitted).

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a handicap of that person."  42 U.S.C. § 3604(f)(2).  Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  Id. § 3604(f)(3)(b).  Nothing, however, "requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals."  42 U.S.C. § 3604(f)(9); 24 C.F.R. § 100.202(d).

Here, while defendants Mid-Atlantic and LPC had an obligation to make reasonable accommodations when necessary to afford handicapped individuals equal opportunities in housing, they also had discretion to deny the Ashton defendants' accommodation request if Luna

10

posed a direct threat to the health or safety of other individuals.  See id.  Accordingly, summary judgment is denied on the issue of preemption.  Whether defendants were negligent in allowing Luna to stay with the Ashton defendants is a separate matter that will be discussed below.

### 2. Negligence

Defendants Mid-Atlantic and LPC also contend that, even if plaintiff's claims are not preempted by the FHA, plaintiff cannot establish that they were negligent.  (ECF No. 83-1 at 10).  "In an action against a person other than an owner of a dog for damages for personal injury or death caused by the dog, the common law of liability relating to attacks by dogs against humans that existed on April 1, 2012, is retained as to the person without regard to the breed or heritage of the dog."  Md. Code, Cts. & Jud. Proc. § 3-1901(b).  Under the common law of liability that existed on April 1, 2012, a plaintiff who sues a landlord for injuries resulting from an attack by a tenant's dog must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached the duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty."  Shields v. Wagman, 350 Md. 666, 672, 714 A.2d 881, 883-84 (1998).  To establish liability in this case, plaintiff must show that defendants Mid-Atlantic and LPC were aware of Luna's presence on the property, had control over Luna's presence on the property, and knew or should have known of Luna's dangerous propensities.  See Matthews v. Amberwood Assocs. Ltd. P'ship, Inc., 351 Md. 544, 569-70, 719 A.2d 119, 131 (1998); see also Ward v. Hartley, 168 Md. App. 209, 214-15, 895 A.2d 1111, 1114 (2006).

Here, defendants Mid-Atlantic and LPC argue that plaintiff cannot establish liability because they did not know or have reason to know of Luna's dangerous propensities.  (Id. at 10-11).  As plaintiff notes (ECF No. 94 at 1-3), however, defendants Mid-Atlantic and LPC present

internally inconsistent evidence of the records they reviewed prior to allowing Luna to stay with the Ashton defendants, creating a genuine dispute of material fact as to whether they knew or should have known of Luna's dangerous propensities.  In response to plaintiff's Interrogatory No. 19, which asked what investigation was made into Luna's background prior to granting an exception to the lease prohibiting rottweilers, defendants Mid-Atlantic and LPC indicated that they "obtained information pertaining to [Luna's] medical history (including immunization and vaccinations) and behavioral history." (ECF No. 94-1 at 3).  Defendants Mid-Atlantic and LPC then referred plaintiff to Mr. Ashton's Verification of Disability form as well as records from Mt. Pleasant Animal Hospital, Annapolis Veterinary and Wellness, Dogwood Animal Hospital, and Animal Hospital of Fayetteville.[4] (Id. at 3-4).

        In their reply, however, defendants Mid-Atlantic and LPC offer, for the first time, the sworn declaration of Erin May ("Ms. May"), an employee of defendants who asserts that she processed Mr. Ashton's November 2018 application to reside in Arundel Estates with Luna.  (ECF No. 90-10 ¶ 3, 5).  In her declaration, Ms. May asserts that with respect to Luna, she "did not obtain or review any progress notes or veterinary charts from any veterinarian hospital, including from Mt. Pleasant Animal Hospital."  (Id. ¶ 9).  She also references the "limited documentation" provided by the Ashton defendants, which she reviewed before granting their request for an accommodation to keep Luna on their property.  (Id. ¶ 10).  Ms. May asserts that "[n]one of this documentation indicates that Luna had a history of biting other humans or otherwise exhibiting dangerous behavior."  (Id.)  The records reviewed by Ms. May, however, consisted entirely of invoices for services rendered (e.g., immunizations and vaccinations) at various veterinary

---

[4] In addition, Maureen Van Besien, defendants Mid-Atlantic and LPC's corporate designee, confirmed during her deposition that defendants Mid-Atlantic and LPC obtained information pertaining to Luna's medical history and behavioral history.  (ECF No. 85-15 at 12-13).

hospitals without any specific notes about Luna's behavior (see ECF No. 90-11 at 1-8), thereby contradicting defendants Mid-Atlantic and LPC's answer to Interrogatory No. 19 in which they indicated that they had obtained information pertaining to Luna's "behavioral history." Accordingly, the conflicting evidence presented by defendants Mid-Atlantic and LPC, including their belated proffer of Ms. May's declaration and their response to plaintiff's Interrogatory No. 19, generates a genuine dispute of material fact as to whether defendants Mid-Atlantic and LPC knew or should have known of Luna's dangerous propensities.

### 3. Strict Liability

Finally, defendants Mid-Atlantic and LPC argue that plaintiff's strict liability claim fails as a matter of law because Section 3-1901(c), the strict liability provision of the Maryland Code, does not apply to them.  (ECF No. 90 at 10-11).  Plaintiff fails to address this argument in her motion papers.  (See ECF Nos. 85-1 at 27-28, 94 at 1-4).  Section 3-1901(c) provides that "[t]he *owner* of a dog is liable for any injury . . . that is caused by the dog[] while the dog is running at large."  Md. Code, Cts. & Jud. Proc. § 3-1901(c) (emphasis added).

Here, the Ashton defendants were the owners of Luna, not defendants Mid-Atlantic and LPC.  (ECF No. 83-16 at 7).  Under Maryland law, a plaintiff may only allege *negligence* against non-owners such as defendants Mid-Atlantic and LPC.  See Md. Code, Cts. & Jud. Proc. § 3-1901(b) ("In an action against a person other than an owner of a dog for damages for personal injury . . . caused by the dog, the common law of liability relating to attacks by dogs against humans that existed on April 1, 2012, is retained as to the person without regard to the breed or heritage of the dog."); see also Brown v. Broom, No. GLR-15-3771, 2016 WL 3344485, *1, *2 (D. Md. June 15, 2016) (noting that "the common law of liability" on April 1, 2012, was

negligence).  Accordingly, to the extent plaintiff alleges a strict liability claim against defendants Mid-Atlantic and LPC, summary judgment is granted as to that claim.

**III.**    **CONCLUSION**

For the foregoing reasons, defendants Mid-Atlantic and LPC's Motion for Summary Judgment and Request for Hearing (ECF No. 83) is granted in part and denied in part, and the Ashton defendants' Renewed Motion for Summary Judgment (ECF No. 84) is granted in part and denied in part.[5]  A separate order will be issued.


July 6, 2022                                                            _____/s/_____
                                                                             Beth P. Gesner
                                                                             Chief United States Magistrate Judge

---

[5] Plaintiff's negligence claim against the Ashton defendants in Count I and plaintiff's negligence claim against defendants Mid-Atlantic and LPC in Count II are the sole remaining claims.